UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ANTHONY MARTINEZ, | Case No. 1:24-cv-01257-HBK |
| Plaintiff, | ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1] |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (Docs. 12, 15) |
| Defendant. | |

John Anthony Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and child's insurance benefits under the Social Security Act. (Doc. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Docs. 12, 15). For the reasons set forth more fully below, the Court affirms the Commissioner's decision.

**I.    JURISDICTION**

Plaintiff protectively filed for supplemental security income and child's insurance benefits

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. 8).

on October 20, 2021, alleging a disability onset date of January 2, 2021 in both applications.  (AR 257-266, 269-75).  Benefits were denied initially (AR 64-109, 159-64, 184-89) and upon reconsideration (AR 110-154, 168-74).  Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on December 21, 2023.  (AR 33-63).  Plaintiff testified at the hearing and was represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 12-32) and the Appeals Council denied review (AR 1-6).  The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 20 years old at the time of the hearing.  (*See* AR 35).  He graduated from high school and was enrolled in special education classes.  (AR 42-43).  He testified that he tried to enroll in college classes but had a "hard time figuring out how to do it online."  (AR 43).  He lives with his parents and his nephews.  (AR 41).  He has no past work history.  (AR 44).  Plaintiff testified that he is prevented from working because he has a hard time comprehending and focusing on tasks, and because of his fine motor skills, inability to walk "far," getting distracted, and forgetting instructions from his supervisor.  (AR 44-48).  He wears an orthotic on his left foot but does not use an assistive device.  (AR 45).  He reported that if he walks for long periods of time he starts "hurting," and he cannot comfortably walk a city block.  (AR 49-50).  Plaintiff testified that he has not had seizures "recently," and he gets migraines and stress-induced headaches.  (AR 50-51).  He has anxiety that gets worse being in public, has a hard time concentrating on "things he doesn't like" but can concentrate for a long time on things he does "like," and has trouble with fine motor skills like writing and typing.  (AR 51-52).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§

3

404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

4

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.    ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 2, 2021, the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: cerebral palsy, anxiety disorder, and borderline intellectual functioning. (AR 18). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 18). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally operate foot controls with the bilateral lower extremities. The claimant can occasionally balance, stoop, crouch, and crawl. The claimant can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can never work in an area that has concentrated exposure to extreme heat or cold. The claimant can never work in hazardous environments, such as at unprotected heights or around moving mechanical parts. The [claimant] can understand, remember, and carry out simple instructions in the workplace, can work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting and can perform repetitive work, but not work requiring a specific production rate,

5

such as assembly line work.  The claimant can have no more than occasional interaction with supervisors, coworkers, and the general public with respect to performing work related duties.

(AR 20).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 26).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including collator operator, merchandise marker, and photocopying machine operator.  (AR 26-27).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 2, 2021, through the date of the decision.  (AR 27).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act and child's disability benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issue for this Court's review: whether the physical and mental RFC is supported by substantial evidence in light of the ALJ's consideration of the medical opinion of Merveen Appu, M.D.  (Doc. 12 at 7-26).

## VII.    DISCUSSION

### A.  Medical Opinions

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

6

Plaintiff argues the ALJ erred in considering the treating medical opinions of Merveen Appu, M.D., addressing Plaintiff's physical and mental limitations. (Doc. 12 at 7-26). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to,

explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 1. Physical Medical Source Statement

In January 2023, Dr. Merveen Appu completed a physical medical source statement opining that Plaintiff can walk no city blocks without rest or severe pain; he can sit, stand, and walk for less than 2 hours total in in an 8-hour working day; he needs a job that permits shifting positions at will from sitting, standing, or walking; he "must" walk every 30 minutes for 10 minutes at a time during an 8-hour working day; he will need to take unscheduled breaks 3-4 times during a working day for 20 minutes before returning to work; he must use a cane or other hand-held assistive device for standing and walking; he can never twist, stoop, crouch/squat, claim stairs, and climb ladders; he has significant limitations with reaching, handling, or fingering; he is likely to be "off task" for 25% or more of a typical workday; he is incapable of tolerating even "low stress" work; he is likely to absent about four days per month as a result of the impairments or treatment; and he will need to take unscheduled breaks 3 times during a working day for 10-15 minutes before returning to work. (AR 582-85). The ALJ found Dr. Appu's opinion as to Plaintiff's physical limitations unpersuasive. (AR 24).

8

As an initial matter, to the extent Plaintiff argues the supportability analysis was not supported by substantial evidence, this argument is unavailing.  The ALJ specifically found the opinion "*was supported* with reference to [Plaintiff's] subjective complaints, his diagnoses, clinical findings, and [his] treatment."  (AR 24 (emphasis added)).  Thus, the Court is unable to discern, nor does Plaintiff articulate, any harmful error in the ALJ's consideration of the supportability of Dr. Appu's opinion as to Plaintiff's physical limitations.  *See Woods*, 32 F.4th at 793-94, n.4 (noting the ALJ found the opinion was supported and affirming the ALJ's rejection of a medical opinion based on the inconsistency factor alone).  However, as to consistency, the ALJ found that "while the longitudinal record is generally consistent with exertional, postural, and environmental limitations, it is not consistent with the degree of limitation opined, nor is it consistent with the unscheduled breaks, additional absences, time off task, or need for shifting positions that were opined by Dr. [Appu].  As discussed [earlier in the decision, Plaintiff's] normal and abnormal physical examination findings; his conservative treatment during the period at issue; his subjective complaints; and his activities of daily living are consistent with a limitation to work at the light exertional level with the [noted] postural and environmental limitations and limitations on [his] ability to operate foot controls."  (AR 24-25 (citing 306-13, 314-25, 527-28, 537-49, 560-66, 567-73, 602-04, 632, 638, 664)).

In considering the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).  Plaintiff argues (1) the ALJ's reliance on a string cite, including general cites to "entire exhibits," in support of his finding "does not constitute the requisite specificity required when discussing the supportability of Dr. Appu's opinion with his own evidence of record and the consistency of Dr. Appu's opinion with the record as a whole"; and (2) the ALJ "glosses over by harmfully and erroneously failing to discuss" evidence in Dr. Appu's own examination notes and the record as a whole including "seizure-like events," "spastic quadriplegia" of the right leg, decreased muscle bulk with increased tone, reduced hamstring reflexes, right knee contracture, paresthesia and numbness,

"hip hike" gait, crouching gait, abnormal gait, a need to wear ankle foot orthosis (AFO) on the right lower extremity, leg length discrepancy, reduced deep tendon reflexes, and the inability to perform a "strait leg raise."[2]  (Doc. 12 at 7-14 (AR 520 (noting spasms and seizures are "well controlled" with medication), 528, 539, 543-47, 552-55, 564-65, 582-83 (Dr. Appu's summary of Plaintiff's symptoms), 632-33, 638, 652-53, 664); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct.").  Defendant argues the ALJ "reasonably found Dr. Appu's opinion not persuasive because it was not consistent with the extreme limitations, particularly those regarding unscheduled breaks, additional absences, time off task, and the need to shift position." (Doc. 15 at 5-6).

While the Court would generally look unfavorably upon a string cite referencing multiple pages without specific reference, as discussed below, each of the "entire exhibits, constituting 66 pages" cited by the ALJ in this instance offers relevant and easily discernable support from across the longitudinal record for the ALJ's findings.  *See Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may be reasonably discerned.") (internal quotations and citations omitted).  Moreover, the ALJ directly references his discussion of the physical medical evidence earlier in the decision, including evidence that could be considered more favorable to Plaintiff, cited in his opening brief, documenting spasticity in the right lower extremity, a flat walk, abnormal gait, dystonia in the bilateral lower extremities, axial hypotonia with appendicular hypertonicity, reduced strength in the bilateral lower extremities, ability to move all extremities equally, normal strength and

---

[2] The Court notes that Plaintiff does not specifically challenge the ALJ's findings, as part of the medical opinion analysis, that the assessed RFC was consistent with Plaintiff's activities of daily living and conservative treatment during the relevant period; moreover, to the extent Plaintiff relies on his own self-reports and testimony as support for her argument, the ALJ properly discounted Plaintiff's subjective complaints, and Plaintiff does not challenge that finding in his opening brief.  The Court may decline to consider issues not raised with specificity in Plaintiff's opening brief.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

10

coordination in the extremities, normal coordination, average motor movement, and normal neurological examination without tremor.  (AR 21, 24-25, 527-28, 537-49 (noting ability to perform daily activities mostly independently), 542 (normal asleep EEG results), 551-59 (2021 record noting "good long-term outcome" and Plaintiff is "doing well" after right lower extremity surgery in 2015), 560-66, 569-73, 602-04 (2022 record noting gait pattern has "dramatically improved" relative to preoperatively and maintained benefits of surgery), 632, 638, 664)).  The ALJ also noted at the January 2022 consultative examination Plaintiff was observed to ambulate independently and "nothing atypical was observed in [his] gait or postural presentation," he wore a right ankle brace at times in the record, he received conservative treatment including medication and physical therapy during the relevant period, and his spasms were well controlled in December 2020.   (AR 21, 527-28, 551, 564-65, 569-73).  Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, substantial evidence supports the ALJ's finding that Dr. Appu's opinion as to Plaintiff's physical limitations is not persuasive because the severity of the opined limitations, particularly as to ability to walk a city block, unscheduled breaks, additional absences, time off task, and need for shifting positions, are not consistent with or supported by the "normal and abnormal physical examination findings."  (AR 24); 20 C.F.R. § 416.920c(c)(1)-(2); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding that Dr. Appu's opinion as to Plaintiff's physical limitations is not persuasive was supported by substantial evidence after proper consideration of the supportability and consistency factors.  20 C.F.R. § 416.920c(c)(1)-(2); *Woods*, 32 F.4th at 792.  The Court finds no error in the ALJ's consideration of the medical opinion evidence and the formulation of the physical RFC.

### 2.  Mental Health Residual Functional Assessment

Also in January 2023, Dr. Appu completed a mental residual capacity questionnaire opining that Plaintiff is not precluded from interacting appropriately with the general public,

11

asking simple questions or requesting assistance, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and he is precluded for 5% or more of an 8-hour workday in his ability to carry out short and simple instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (AR 586-87).  However, he is precluded for 15% or more of an 8-hour workday in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.  (*Id*.).  Dr. Appu estimated that Plaintiff would be absent from work for five or more days per month as a result of his impairments, would be unable to complete an 8-hour workday as a result of his impairments, and cannot manage benefit payments.  (AR 588). The ALJ found Dr. Appu's opinion as to Plaintiff's physical limitations unpersuasive.  (AR 25).

First, Plaintiff argues that the ALJ erred in considering the supportability factor because he failed to discuss the evidence cited by Dr. Appu in his opinion in support of the assessed mental health limitations.  (Doc. 12 at 18-19).  However, as above, this argument is unavailing. The ALJ specifically found Dr. Appu's opinion "*was supported* with reference to [Plaintiff's] diagnoses, treatment, and subjective complaints."  (AR 25 (emphasis added)).  Thus, the Court is unable to discern, nor does Plaintiff articulate, any harmful error in the ALJ's consideration of the supportability of Dr. Appu's opinion as to Plaintiff's mental limitations.  *See Woods*, 32 F.4th at 793-94, n.4 (noting the ALJ found the opinion was supported and affirming the ALJ's rejection of a medical opinion based on the inconsistency factor alone).

12

As to the consistency factor, Plaintiff asserts largely the same arguments he presented as to Dr. Appu's physical assessment, namely, (1) the ALJ's reliance on the exact same string cites to the "exact, same exhibits" as he did in rejecting Dr. Appu's opinion regarding Plaintiff's physical limitations is harmful error, and, as above, "does not contain adequate consistency and supportability analysis and thus does not constitute substantial evidence to reject Dr. Appu's psychological [mental residual functional capacity] limitations"; and (2) the ALJ "glosses over and harmfully and erroneously fails to discuss" evidence cited by Dr. Appu in support of his assessed mental health limitations and "the probative evidence as a whole supporting Dr. Appu's disabling limitations due to his reduced intellectual functioning, abnormal fund of knowledge and learning disabilities in relation to the rejection of Dr. Appu's psychological limitations and from treating physicians." (Doc. 12 at 16-26).

In support of these arguments, Plaintiff cites the narrative support offered by Dr. Appu in the medical opinion explaining that Plaintiff has learning difficulties, is nervous and anxious, gets frustrated when unable to answer questions, has difficulty carrying on a conversation and expressing himself, and his fund of knowledge is abnormal. (Doc. 12 at 18-19 (citing AR 586-88)). Plaintiff also argues the ALJ failed to "discuss in detail" medical evidence in the longitudinal record including diagnosis of anxiety disorder and depressed mood; 2022 presentation with "severe social anxiety" and mildly to moderately impaired judgment and insight on mental status examination in 2022 and 2023; agitated and anxious affect; "severe" test results in the 2023 neuropsychological evaluation in language and non-language processing, verbal and nonverbal reasoning, working memory, and attention; and reports by Plaintiff at treatment visits that he felt down and depressed, once "grabbed a knife and intended to slit his wrists," used a rock to hit the door when he was locked in the bathroom because he had anxious thoughts about being left behind, "doesn't know how he feels," "is tired of feeling hurt, scared, angry, feeling I did something wrong," felt lonely, and was anxious and depressed.[3] (Doc. 12 at 22-26 (citing AR

---

[3] Petitioner also argues the ALJ "fails to discuss in relation to his rejection of Dr. Appu's MRFC limitations his IEPs from 7th grade through 12th grade" documenting "severe academic discrepancies" compared to his peers and difficulties with daily living, and an "individual program plan" from 2020 documenting behavioral health concerns and lack of independence in daily self-care routines. (Doc. 12 at

13

563, 565, 641-43, 647-48 (noting diagnoses of learning difficulty, receptive and expressive language disorder, attention deficit disorder, cognitive disorder, borderline intellectual disability, and reading disorder), 673, 675, 677, 679, 681, 683, 685, 687, 689, 691, 695, 699-704). Defendant argues the ALJ reasonably found Dr. Appu's opinion not persuasive.  (Doc. 15 at 6).

As an initial matter, to the extent Plaintiff relies on his own self-reports and testimony as support for her argument, the ALJ properly discounted Plaintiff's subjective complaints, and Plaintiff does not challenge that finding in his opening brief.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised with specificity in plaintiff's opening brief).  Moreover, while the records cited by the ALJ to support his rejection of Dr. Appu's mental health opinion are comprised largely of same records offered in support of his finding as the Dr. Appu's physical opinion, the records are not entirely identical; moreover, as above, the overall medical record is not extensive in this case, and the cited records offers relevant support from across the relevant adjudicatory period.  Finally, in support of this finding, the ALJ directly references his discussion of the mental health evidence earlier in the decision, which notably includes many of the same abnormal mental status examination findings and Plaintiff's subjective complaints cited by Plaintiff in his opening brief as improperly "glossed over" by the ALJ.  For example, the ALJ noted that Plaintiff complained of social anxiety, anger, sleep issues, and that he was a "slow learner, and mental examination during the relevant period showed immature speech and language for his age, frustrated behavior, speaking in slow sentences, misuse of words, impaired concentration, difficulties in language processing, impaired memory, poor judgment and insight, and depressed and anxious mood, and had a full-scale IQ score of 77 which is borderline intellectual functioning range.  (AR 22, 539 (immature language for his age), 563, 565 (referred for counseling), 570-73 (noting he received special education services in school), 638, 642-43 (noting his scores place him within the

_____

19-22). However, this evidence is all dated well before the alleged onset date of disability in January 2021 and is therefore of limited relevance in assessing Dr. Appu's January 2023 opinion. *See*, *e.g.*, *Pacheco v. Berryhill*, 733 Fed. App'x 356, 360 (9th Cir. 2018) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("evidence that predates the alleged onset date of disability is of limited relevance").

14

intellectually impaired range, and his level of functioning), 661, 670, 673, 675, 677 (reporting concerns about how he will survive when his parents are no longer around to support him), 679, 681 (reporting no one ever taught him basic listening skills), 683, 687, 695, 697.  However, the ALJ also cited normal mental status examination results indicating Plaintiff was alert and oriented, interactive, cooperative, pleasant, exhibited appropriate mood and affect, had normal eye contact, intact memory, normal attention and concentration, concrete thought processes and normal psychomotor activities, was able to answer questions, and was able to "apply himself in a consistent, persistent, effortful fashion to the meaningful engagement and completion of tasks presented to him." (AR 22, 538 (noting mild delays but able to perform daily activities mostly independently), 539, 544 (noting good eye contact and appropriate speech and language for his age), 548 (same), 561, 570-73 (noting no restrictions in daily activities or difficulties in maintaining social relationships), 618, 625 (mood mostly good), 632, 638, 642, 652, 658, 661, 673, 675, 677, 679, 681, 683, 687, 693, 695 (good judgment for developmental level), 697.

Based on the foregoing, despite evidence that could be considered more favorable to Plaintiff, substantial evidence supports the ALJ's conclusion that Dr. Appu's opinion as to Plaintiff's mental health limitations is not persuasive because the "degree" of the opined limitations is not consistent with mental status examination findings across the longitudinal record. (AR 25); 20 C.F.R. § 416.920c(c)(1)-(2); *see Burch*, 400 F.3d at 679.  After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's finding was supported by substantial evidence after proper consideration of the supportability and consistency factors. 20 C.F.R. § 416.920c(c)(1)-(2); *Woods*, 32 F.4th at 792.  The Court finds no error in the ALJ's consideration of the medical opinion evidence and the formulation of the mental RFC.

### VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinions.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED.

2. Defendant's Cross-Motion for Summary Judgment (Doc. 15) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:    April 2, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

16